```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
_____
DENNIS MAZZETTI,              :   Civil Action No.: 12-5347 (KSH)
                              :
         Plaintiff,           :
                              :
     v.                       :
                              :
THE NEW JERSEY DIVISION OF    :
CHILD PROTECTION AND          :
PERMANENCY, KARA P. WOOD,     :
ALLISON BLAKE, KATHLEEN A.    :
LUCAS, ANNA SEVERINO, MARY    :
WEIXEL-MARTIN, SUSAN M.       :
SLAFF, ALICE SHAEFFER         :
NADELMAN, et al.,             :
                              :
         Defendants.
_____
```

## SUPPLEMENTAL BRIEF

JOHN HOFFMAN
ACTING ATTORNEY GENERAL OF NEW
 JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625
Attorney for Defendants,
State of New Jersey, Department
of Children and Families,
Division of child Protection
and Permanency; Kara Wood;
Allison Blake; Kathleen A.
Lucas, Anna Severino, Mary
Weizel-Martin, and Susan Slaff

CARLA PEREIRA
DEPUTY ATTORNEY GENERAL
 On the Brief

### I. PLAINTIFF'S COMPLAINT IS BARRED BY THE ROOKER-FELDMAN DOCTRINE.

The Rooker-Feldman doctrine bars federal court jurisdiction over adjudicated state court matters. Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283-84 (2005). The doctrine applies to "... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. Rather, the appropriate venue for review of state court judgments is the United States Supreme Court, pursuant to 28 U.S.C. §1257. Id. at 283.

The Court utilizes a four part test to determine the applicability of the Rooker-Feldman doctrine to a specific case:

> (1)the federal plaintiff lost in state court; (2)the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. Exxon Mobil, 544 U.S at 284....
>
> [Great Western Mining & Mineral Company v. Fox Rothschild, 615 F.3d 159, 166 (3d Cir. 2010).]

The first and third Great Western factors have been met in the present case and not in dispute. Plaintiff did not prevail in state court and the appellate division upheld the termination of his

parental rights. Further, the termination of rights by the New Jersey State courts was determined prior to the plaintiff's commencement of the federal court action.[1]

Moreover, a review of the remaining two prongs, the second and fourth, of the Great Western test also support the application of the Rooker-Feldman doctrine. As stated by the Third Circuit "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." Great Western, 615 F.3d at 166. The second factor is satisfied since plaintiff's alleged injuries were the result of the state court judgment. The underlying basis for Mazzetti's federal complaint is the termination of his parental rights by the New Jersey State courts and the numerous family court orders requiring Mazzetti to move from his mother's home, obtain gainful employment and undergo random urine analysis. There cannot be any meaningful dispute that the asserted injury did not pre-exist the rulings by the New Jersey State courts. Rather, his alleged injuries were a direct result of the state court decisions. Therefore, the cause of Mazzetti's alleged injury and the damages which he seeks stem directly from the state court orders as well as the judgment terminating his parental rights.

---

[1] Shortly after Mazzetti instituted his federal action, his Petition for Certiorari was also denied by the United States Supreme Court.

As to the remaining Great Western factor, Mazzetti seeks the federal court's review and rejection of the state court determination. The filing of Mazzetti's federal complaint is a direct challenge to the judgment of the New Jersey State court and Mazzetti has failed to assert any injury that is separate from the termination of his parental rights. A finding by this court that Mazzetti suffered damages as a result of the termination of his parental rights would undermine and be deemed a rejection of the New Jersey State court judgment. Therefore, in light of the satisfaction of the Great Western factors, this court's prior finding that Mazzetti's complaint is barred by the Rooker-Feldman doctrine should be sustained.

### II. TO THE EXTENT THAT PLAITIFF'S CLAIMS ARE NOT BARRED BY THE ROOKER-FELDMAN DOCTRINE, THEY ARE BARRED BY PRINCIPLES OF ISSUE PRECLUSION

Plaintiff's complaint alleges few actual instances of wrongdoing against the State Defendants. To the extent that any such allegations are made, however, they are barred because they were previously, and properly, addressed by the Family Part and the Appellate Division.

"The doctrine of issue preclusion…derives from the principle that later courts should honor the first decision of a matter that has been actually litigated." Burlington N. R.R. v. Hyudai Merchant Marine Co., 63 F.3d 1227, 1232 (3d Cir. 1995).

In the Third Circuit the requirements for the application of issue preclusion are satisfied when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." Id. At 1232 (*quoting* In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992)).

The present case stems from a termination of parental rights in the Superior Court of New Jersey, Family Part. Federal courts have consistently shown special solicitude for state interests "in the field of family and family property arrangements." United States v. Yazell, 382 U.S. 341, 352 (1966); see also Lehman v. Lycoming Cnty. Children's Servs. Agency, 458 U.S. 502, 512 (1982). Additionally, reviewing courts give deference to finds of fact-and particularly credibility determinations-made by family courts. See, e.g., N.J. Div. of Youth & Family Servs. V. G.L., 191 N.J. 596, 605 (2007).

The United States Constitution recognizes a "constitutionally protected liberty interest that parents have in the custody, care and management of their children," but that interest is "not absolute"; it is counterbalanced by a "compelling governmental interest in the protection of children." Croft v. Westmoreland Cnty. Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997). Guardianship proceedings such as were commenced in the New Jersey

Family Part are undertaken in accordance with these underlying constitutional guarantees. Further, the State, in termination proceedings, is held to a higher "clear and convincing" standard, as required by the Supreme Court. N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 612 (1986).

In terminating parental rights, New Jersey courts follow a four-part standard, as articulated in A.W., supra. 103 N.J. at 603, and codified in N.J.S.A. 30:4C-15.1(a).

(1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
(4) Termination of parental rights will not do more harm than good.

[Ibid.]

In the opinion of the State Appellate Division, each prong was addressed in turn and the court affirmed the trial court's findings. The Complaint in this case alleged violations of his civil rights under the United States Constitution, however, any discrete allegations of wrongdoing were properly addressed by the

State Court. See NJ DYFS v. D.M., Docket No. A-2509-09T3, slip op. at 2, 2012 N.J. Super. Unpub, LEXIS 120 (App. Div. Jan 18, 2012).

Because State Courts are constrained by the Constitution when deciding such matters, and because the State Court specifically relied upon its factual findings in determining that the test for such removal was met, all of the issues raised by plaintiff is his complaint were actually litigated, were determined by a final and valid judgment, and those determinations were essential to that prior judgment. These are the same issues being raised before this Court, and they should therefore be precluded.

### III. PLAINTIFF's COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS INSOFAR AS THE CLAIM ASSERTED UNDER §1983, RELATE TO THE ACTIONS TAKEN MORE THAN TWO YEARS PRECEDING THE FILING OF THE COMPLAINT

Plaintiff's complaint of a violation of his Constitutional rights should be dismissed since the applicable statute of limitations expired prior to his filing of the complaint on August 23, 2012.

Statutes of limitations are essentially equitable in nature, promoting the timely and efficient litigation of claims. Ochs v. Federal Ins., Co., 90 N.J. 108, 447 A.2d 163 (1982). They "spare courts from litigating stale claims," Farrell v. Votator Div., 62 N.J. 111, 1115, 299 A.2d 394 (1973); penalize delay, and provide repose, Roseneau v. City of New Brunswick, 51 N.J. 130, 136, 238 A.2D 169 (1968).  As the United States Supreme Court has written:

"Just determination of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost." Wilson v. Garcia, 471 U.S. 261, 272, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254, 264 (1985). "In compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten." Ibid.

The United States Supreme Court has found that the statute of limitations for a constitutional tort such as §1981 or §1983 claim rests in State law. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed. 2d 572 (1987). In Wilson, supra, the court found that in §1983 claims, the claims are essentially for personal injury. Id. at 266-68. Therefore, the Court held the statute of limitations for a §1983 claim was the personal injury statute of limitations for the State. Id. In the State of New Jersey, the statute of limitations for personal injury actions is two years. N.J.S.A. 2A:14-2.

In the case at hand, plaintiff filed his complaint on August 23, 2012. The Superior Court, Family Part, terminated plaintiff's parental rights on December 14, 2009 after a five day trial. Plaintiff filed this Complaint almost three years after his loss of parental rights.  Plaintiff's claim for damages preceded two years from the date of the filing and is therefore not compensable.

## IV.   PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.

In order for a plaintiff to invoke standing in accordance with Article III of the Constitution, a plaintiff must allege an "actual case or controversy." Flast v. Cohen, 392 U.S. 83, 94-101 (1968). An actual case or controversy is established by a showing that plaintiff has:

> sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct, and the injury or threat of injury must be "real and immediate," not 'conjectural' or 'hypothetical.' Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.

O'Shea v. Littleton, 414 U.S. 488, 595-96 (1974).

An individual seeking injunctive relief must show "irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." Id. at 502; see City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983). Moreover, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. at 496. In City of Los Angeles v. Lyons, the plaintiff sought injunctive relief to bar the City of Los Angeles Police Department from utilizing chokeholds except in situations where the proposed victim reasonably appeared to be threatening the immediate use of deadly force. Id. at 98. The

Court found that plaintiff did not face a real or immediate threat that he would be subject to the same circumstances again with the Los Angeles Police Department. Id. at 105. Therefore he lacked standing to request injunctive relief. Ibid.

In the present case, plaintiff is seeking injunctive relief in the form of an order requiring that an explicit instruction and policy be made requiring employees of the Division of Child Protection and Permanency to refrain from abuse of process. Plaintiff lacks standing to seek this injunctive relief as there is no immediate threat he would be subject to abuse of process. Although plaintiff's parental rights have been terminated, the future harm depends on the Division improperly seeking to terminate plaintiff's parental rights. Plaintiff's alleged injury is not "real and immediate." As discussed in City of Los Angeles, supra, a plaintiff must show continuing, present adverse effects to establish a case or controversy, and plaintiff Mazzetti has failed to show any present adverse effects or future harm he may face in order to have standing for injunctive relief.

## CONCLUSION

In light of all the foregoing, Plaintiff has failed to state a claim upon which relief can be granted against Defendants, and the Complaint should be dismissed with prejudice.

                        JOHN J. HOFFMAN
                        ACTING ATTORNEY GENERAL OF NEW JERSEY


                        By: _/s/ Carla Pereira
                            Carla Pereira
                            Deputy Attorney General

DATE: September 19, 2014